IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vernon Lee Haygood, ) | C/A No.: 3:14-3886-TLW-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| The City of West Columbia; John King; ) | |
| William Norris; Officer Cubelli,[1] ) | |
| ) | |
| Defendants. ) | |
| ) | |

    Plaintiff Vernon Lee Haygood ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. He sues the City of West Columbia and West Columbia Police Department Officers John King, William Norris, and Mike Cubelli (collectively "Defendants").

    This matter is before the court on Defendants' motion for summary judgment [ECF No. 33]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 36]. The motion having been fully briefed [ECF Nos. 40, 41, 42], it is ripe for disposition.

    All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.). Because this motion is dispositive, this report and recommendation is entered for review by the district judge. For the following reasons, the undersigned recommends

---

[1] It appears that the defendant Plaintiff identified as Quebelly is correctly identified as Cubelli.

Defendants' motion for summary judgment [ECF No. 33] be granted.

I.     Factual Background

In his complaint, Plaintiff alleges Defendants falsely arrested him and beat him on August 31, 2013. [ECF No. 1 at 3]. He claims they gave false police reports and would not allow him to receive medical attention at the hospital or jail. *Id*. He further alleges that the state dropped the charges against him. *Id*.

Defendants allege the following facts, which Plaintiff has not disputed. Janice Haygood ("Ms. Haygood"), Plaintiff's wife, approached King and asked how she could obtain her truck from her husband. King Aff. ¶ 4.[2] King ultimately told Ms. Haygood that because she and Plaintiff were married, the issue was a civil matter. *Id*. A few minutes later, Ms. Haygood informed King that Plaintiff pulled into 1516 Ross Street with the truck. *Id*. at ¶ 5. She told King that she was going to have the truck towed, but requested King stop by the location because she was afraid that Plaintiff would lash out at her. *Id*.

When King arrived at 1516 Ross Street, Plaintiff was getting things out of the truck and told King he would not let Ms. Haygood take the truck. *Id*. at ¶ 6. He also stated that if Ms. Haygood went into the yard, he would bash her head with a hammer he had taken from the bed of the truck. *Id*. Plaintiff stated that he would kill Ms. Haygood. *Id*. He began to yell obscenities and gesture with the hammer in a threatening manner. *Id*. Plaintiff refused King's instructions to put the hammer down and began advancing towards King. *Id*. at ¶ 7. To protect himself, King unholstered his taser. *Id*. Upon seeing the taser, Plaintiff stopped advancing toward King, but continued to refuse King's

---

[2] King's affidavit may be found at ECF No. 33-2.

commands to put the hammer down. *Id.* When Plaintiff stopped advancing, King held his taser down by his side. *Id.* at ¶ 8. King called for assistance, and Cubelli and Norris arrived. *Id.* at ¶¶ 7–8.

Despite the repeated requests to put down the hammer, Plaintiff continued to wield the hammer. *Id.* at ¶ 7. Neighbors heard Plaintiff yelling and came out to see what was happening. *Id.* at ¶ 8. Plaintiff finally put the hammer down on the side rail of the truck, but refused the officers' requests that he come towards them and move away from the truck. *Id.* The officers then approached Plaintiff and attempted to place him in handcuffs, but Plaintiff resisted. King Aff. ¶ 9; Cubelli Aff. ¶ 8; Norris Aff. ¶ 8.[3] When it appeared that Plaintiff was attempting to grab the hammer again, one of the officers moved the hammer out of his reach. King Aff. ¶ 9. Also, while Cubelli was attempting to handcuff Plaintiff, Plaintiff attempted to bite Norris's shoulder. Cubelli Aff. ¶ 8; Norris Aff. ¶ 8.

When Plaintiff complained that he began experiencing pain after being handcuffed, the officers used two sets of handcuffs so that Plaintiff would not be required to reach his arm back as far to be cuffed and to give his arms additional room to move. King Aff. ¶ 10; Cubelli Aff. ¶ 9; Norris Aff. ¶ 9. Once he was handcuffed, Plaintiff continued to resist, and the officers were forced to carry him to the police car. [ECF No. 33-8]. When he refused to voluntarily enter the vehicle, the officers were forced to place him into the vehicle. After he was placed into the vehicle, Norris transported Plaintiff to

---

[3] Cubelli's affidavit may be found at ECF No. 33-6, and Norris's affidavit may be found at ECF No. 33-7.

the emergency room at Lexington Medical Center to address his complaints of pain. King Aff. ¶ 13; Cubelli Aff. ¶ 12; Norris Aff. ¶ 13.

Plaintiff was charged with criminal domestic violence of a high and aggravated nature ("CDVHAN"), disorderly conduct, and resisting arrest. [ECF No. 33-3 at 5]. The CDVHAN was nolle prossed by the solicitor. [ECF No. 40-4 at 26]. Defendants' motion indicates that Plaintiff's trial on the charges for disorderly conduct and resisting arrest ended in a mistrial in January 2015, and the charges are still pending. [ECF No. 33-1 at 5]..

Defendants submitted video footage from the incident. [ECF No. 33-8]. The video shows Plaintiff with an object in his hand that he eventually puts down when additional officers arrive on the scene. The video reveals that multiple officers were required to place handcuffs on Plaintiff. There are no signs that Plaintiff was beaten by any officer on the video. After the officers carried Plaintiff to the vehicle, Plaintiff complains of pain to his arm. An officer asks Plaintiff if he wants to go to the hospital, and Plaintiff answers affirmatively. The video ends with the patrol car pulling in to the hospital parking lot.

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a

4

genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

1.  False Arrest

Plaintiff argues that Defendants did not have probable cause to arrest him. [ECF No. 40-1 at 1]. Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

"Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991). As a result, to prove an absence of probable cause, Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" he was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002). In considering Defendants' motion, the court is required to view the facts in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255.

Here, Plaintiff was arrested for disorderly conduct under the West Columbia, South Carolina Code of Ordinances, Sec. 9-2-1, which provides:

6

> It shall be unlawful for any person to engage in any of the following acts in any public place, or sufficiently near to any such place or to any residence or place of business as to disturb or annoy any other person: (1) Riotous, tumultuous, violent or obstreperous conduct of any kind; (2) Fighting; (3) Uttering obscene remarks or making obscene gestures; (4) Offering violence to another; or (5) Disclaiming or crying out in a noisy, obscene or abusive manner. StateLawReference: Disorderly conduct, S.C. Code 1976, Sec. 16-17-530.

[ECF No. 42 at 1].[4] Defendants contend that they had probable cause to arrest Plaintiff for disorderly conduct because he was sufficiently near a residence and disturbing and annoying others by offering violence to Ms. Haygood and disclaiming or crying out in a noisy, obscene, or abusive manner. Defendants stated that neighbors heard him yelling and came out of their homes to see what was going on. *See* King Aff. ¶ 8; Norris Aff. ¶ 5; Cubelli Aff. ¶ 5. Plaintiff has provided nothing to dispute these assertions. Therefore, Defendants had probable cause to arrest Plaintiff for disorderly conduct.

Having concluded that Defendants had probable cause to arrest the Plaintiff for at least one charge, the undersigned need not decide whether Defendants also had probable cause to arrest Plaintiff for each charge. *See Barry v. Fowler,* 902 F.2d 770, 773 n. 5 (9th Cir. 1990) (holding that an officer must have probable cause for at least one charge for an arrest to withstand a Fourth Amendment challenge); *Edwards v. City of Philadelphia,* 860 F.2d 568, 575–576 (3d Cir. 1988) (same) (citing *Linn v. Garcia,* 531 F.2d 855, 862 (8th Cir. 1976)). So long as there was probable cause for some offense, the arrest was proper. "[P]robable cause need only exist as to any offense that could be charged under the

---

[4] *See also*, West Columbia City Ordinances at http://www.amlegal.com/nxt/gateway.dll/ South%20Carolina/westcolumbia_sc/cityofwestcolumbiasccodeofordinances/supplement preface?f=templates$fn=default.htm$3.0$vid=amlegal:westcolumbia_sc (last visited July 15, 2015).

7

circumstances." *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3rd 1994); *see also Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir. 1995) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails."). For purposes of the Fourth Amendment, an arrest on multiple charges is a "single transaction," and probable cause will be found to exist, so long as it existed for at least one offense. *See Calusinski v. Kruger,* 24 F.3d 931 (7th Cir. 1994) (holding that at the time of the arrest police officers need probable cause that a crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged.). Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claim of false arrest.

### 2. Excessive Force

Plaintiff claims that Defendants beat him. [ECF No. 1]. Defendants submitted video evidence that shows Defendants did not use more force than was necessary to arrest Plaintiff. [ECF No. 33-8].

An excessive force claim of an arrestee is governed by the due process clause of the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). When analyzing an excessive force claim, "[t]he proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir. 1998) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21 (1991)), abrogated on other grounds by *Wilkins v. Gaddy,* 559 U.S. 34 (2010). In evaluating whether the use of force was wanton or unnecessary, the court considers (1) the need for application of force, (2) the

relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citations omitted).

The video shows that Defendants needed to use some force, as Plaintiff would not cooperate such that they could place him in handcuffs. However, Defendants used only the force necessary to place Plaintiff in handcuffs. Defendants were reasonable in perceiving a threat from Plaintiff, as he refused to follow their commands. Finally, Defendants tempered any force used by loosening Plaintiff's handcuffs and taking him to the hospital for medical attention. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claim of excessive force.

### 3. Medical Indifference

Plaintiff stated under penalty of perjury in his verified complaint that Defendants would not allow him to receive medical attention at the hospital or jail. [ECF No. 1 at 3]. The video evidence shows that Plaintiff was driven to the hospital immediately following his arrest. Further, Defendants submitted medical records of Plaintiff's treatment at Lexington Medical Center that indicate that the examination occurred less than an hour after the injury. [ECF No. 33-9 at 2]. The medical records note that the pain is mild and does not radiate. *Id*. The undersigned recommends Defendants be granted summary judgment on Plaintiff's claims of deliberate indifference to his serious medical needs.

## III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment [ECF No. 33] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 15, 2015                                        Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).